**Frank Marvin PHILLIPS, Jr., Plaintiff,**

v.

**Lynn HUST, Defendant.**

No. 01–1252–HA.

United States District Court, D. Oregon.

March 31, 2004.

Frank Marvin Phillips, Jr., Ontario, OR, Pro se.

Hardy Myers, Attorney General, Leonard W. Williamson, Assistant Attorney General, Oregon Department of Justice, Salem, OR, for Defendants.

1. Because courts must liberally construe a *pro se* plaintiff's complaint, *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir.1988), this court will construe the Amended Complaint as also including a § 1983

## OPINION AND ORDER

HAGGERTY, Chief Judge.

▮ Plaintiff, an inmate at Snake River Correctional Institution ("SRCI") who is proceeding *pro se,* brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendant violated the First Amendment by impeding plaintiff's rights to freely associate, communicate and correspond with others (Claim 1); by interfering with plaintiff's First and Fourteenth Amendment rights to access the courts (Claim 2); and by retaliating against plaintiff when he attempted to exercise his constitutional rights to free speech, to access the courts, and to utilize the prison grievance system (Ancillary to Claims 1 & 2; hereafter labeled "Claim 3").[1] (*See* Am. Compl. (# 25) at 6, 12 & Pl.'s Resp. to Def.s' Concise Statement (# 41) at 11–12.) Currently before the court are the following three motions filed by plaintiff: motion to compel discovery (# 30); motion for summary judgment (# 35); and motion for order granting sanctions (# 42). Also before the court are the following two motions filed by defendants: motion for summary judgment (# 32); and motion for sanctions—request for service (# 44).

## DISCUSSION

### I. *Plaintiff's Motion to Compel Discovery*

Plaintiff moves to compel discovery from defendant pursuant to Fed.R.Civ.P. 37(a) and L.R. 33.3. (*See* Pl.'s Mot. to Compel Disc. (# 30) at 1.) Specifically, plaintiff seeks "an order directing defendant to truthfully, and straightforwardly, answer Interrogatory # 1 and # 3." (Pl.'s Mot. to

claim based on retaliation for asserting his First and Fourteenth Amendment rights to free speech, to access the courts, and to utilize the prison grievance procedures.

Compel Disc. at 2.) Apparently, plaintiff contends that defendant gave answers to the designated interrogatories that were evasive or incomplete, and therefore should be treated as a failure to answer. *See* Fed.R.Civ.P. 37(a)(3). The court notes that plaintiff attempted to resolve the discovery dispute in a letter to defendant dated March 29, 2002, prior to filing a motion to compel. (Pl.'s Mot. to Compel Disc. at 1 & Resp. to Pl.'s Mot. to Compel Disc. (# 31) at Ex. 102.)

Defendant contends that the information sought by plaintiff in Interrogatories No. 1 and No. 3 does not assist him in proving his claims. (Resp. to Pl.'s Mot. to Compel Disc. at 2–3.) Plaintiff's Interrogatory No. 1 reads as follows:

> Relying on documents, records or database in your possession, custody or control list your span of employment at Snake River Correctional Institution (SRCI), in terms of blocks of time assigned to: (1) mixed general and law library duty; (2) general library duty; and (3) law library duty.

(*Id.* at Ex. 101, p. 1.) Defendant responded as follows:

> I began my employment with ODOC on June 2, 1997 as library coordinator. At that time, the law library and general library were in one location on Complex 2. When the law library was moved to Complex 3, I remained on Complex 2 to supervise the general library operation for approximately eighteen months. In June 2001, I became the law library coordinator for the law library on Complex 3 where I remain today.

(*Id.*) In plaintiff's March 29, 2002 letter to defendant, in which he sought a more detailed answer to Interrogatory No. 1, plaintiff explains why he is seeking the information, *i.e.*, in order to show that defendant's lack of experience as a law librarian was a factor which interfered with his access to the courts according to the standards articulated in *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). (*See Id.* at Ex. 102, p. 2. & First Am. Complaint (# 25) at pp. 3–4, 12–15.) Plaintiff contends in his letter that defendant's current answer to Interrogatory No. 1 fails to account for 30 months of her employment. (Resp. to Pl.'s Mot. to Compel Disc. at Ex. 102, p. 2.) The court finds that defendant's answer was sufficiently responsive; accordingly, plaintiff's motion to compel discovery with respect to Interrogatory No. 1 is denied.

Plaintiff also apparently seeks to compel defendant to give a more complete answer to Interrogatory No. 3, which reads as follows:

> Do you have any knowledge of *Lewis v. Casey*, 518 U.S. 343(106)[, 116 S.Ct. 2174], a prison law library case upon which ODOC/SRCI found authority to more tightly control the nature of the legal access function, to experiment with prisoner legal access and to even close the SRCI law library in 1997 for 1 years?

(*Id.* at Ex. 101, p. 2.) Defendant gave the following response: "No." (*Id.*) Plaintiff does not elaborate why he needs further response to this interrogatory in order to establish either of his claims, and defendant has sworn that she answered truthfully as to her knowledge of the *Lewis* case. Accordingly, plaintiff's motion to compel discovery with respect to Interrogatory No. 3 is denied.

## II. *Motions Regarding Plaintiff's Request for Sanctions*

Plaintiff has moved for sanctions pursuant to L.R. 56.1, based on defendant's failure to file a separate response to plaintiff's concise statement of material facts (# 36), which was filed contemporaneously with plaintiff's motion for summary judgment (# 35). (Pl.'s Mot. for Order Granting Sanctions (# 42) at 1–2.) Within five days

of each other, defendant and plaintiff filed motions for summary judgment in this case, together with separate fact statements, supporting memoranda and exhibits.[2] In his motion for sanctions, plaintiff requests that defendant now be barred from responding to his concise statement of material facts—since any further response would now be untimely—and that the facts set forth in plaintiff's concise statement be deemed admitted by defendant pursuant to L.R. 56.1(f). (Pl.'s Mot. for Order Granting Sanctions at 3.) The record shows that plaintiff timely filed a response to defendant's concise statement of material facts (# 41), and did not simply rely on the materials submitted in support of his own motion for summary judgment.

Defendant first responded to plaintiff's motion for order granting sanctions by filing a request with the court to provide a service copy of plaintiff's motion. Defendant's request was docketed as a "Motion for Sanctions–Request for Service" (# 44). According to the record, plaintiff properly filed a certificate of service (# 43) together with his motion for sanctions, in which he certified that he had served a handwritten copy of the foregoing motion on defendant's attorney by placing it in the U.S. Mail drop at SRCI; however, defendant apparently did not receive that mailing. In response to defendant's request for service of the motion for sanctions, plaintiff subsequently cured the service problem—which was apparently caused by a processing error regarding plaintiff's "inmate withdrawal request" for extra postage—by re—sending a copy of the motion to defendant's attorney. (Pl.'s Cert. of Service (# 45) at 2.) Therefore, defendant's motion

requesting service of plaintiff's motion for sanctions (see # 44) is denied as moot.

In her response addressing the merits of plaintiff's motion for sanctions, defendant contends that no further responsive briefing is necessary because defendant is satisfied that she has adequately set forth the facts of the case in a separate concise statement of material facts and has adequately argued the applicable legal standards in her own summary judgment materials, which were filed prior to plaintiff's motion for summary judgment. (Def.'s Resp. to Pl.'s Request for Sanctions (# 46) at 2–3.) In reply, plaintiff argues that defendant should not be permitted to evade "mandatory pleading rules" merely because preparing a response to plaintiff's statement of facts would be inconvenient. (Pl.'s Addendum to Mot. for Order Granting Sanctions (# 48) at 3.)

This court finds that although defendant is not in technical compliance with Local Rule 56.1(b), her conduct caused no prejudice to plaintiff. Defendant has not attempted to file an untimely response to plaintiff's motion for summary judgment. Accordingly, sanctions are not appropriate and will not be imposed. Plaintiff's motion for order granting sanctions is denied.

### III. *Summary Judgment Motions*

#### A. *Introduction*

As discussed above, both defendant and plaintiff have filed motions for summary judgment in this case, and both are currently before this court. *See* Part II, *supra* at p. 5, n. 1 (summarizing the record of filings). Because both parties' motions are intended to address all of the claims raised

---

2. The record indicates that defendant's motion for summary judgment (# 32), concise statement of material facts (# 33), and memorandum in support (# 34) were filed with this court on August 14, 2002, and that plaintiff's motion for summary judgment (# 35), concise statement of material facts (# 36), exhibits in support (# 37), affidavit in support (# 38) and memorandum in support (# 39) were filed on August 19, 2002.

in plaintiff's amended complaint, they will be treated together since, in effect, plaintiff's motion, which was filed five days after defendant's, functions as a cross-motion for summary judgment. This court advised the *pro se* plaintiff of the federal summary judgment standards on November 19, 2001(# 7). *See Rand v. Rowland,* 154 F.3d 952, 960–63 (9th Cir.1998); *Klingele v. Eikenberry,* 849 F.2d 409, 411–12 (9th Cir.1988) (advising *pro se* prisoner of summary judgment requirements under Fed.R.Civ.P. 56).

## B. *Summary of facts*

It is undisputed that plaintiff, Frank Marvin Phillips, Jr., is an inmate in the custody of the Oregon Department of Corrections ("ODOC") who is currently housed at SRCI in Ontario, Oregon, and that defendant, Lynn Hust, is employed by ODOC as a librarian at SRCI. (Def.'s Concise Stmt. of Mat. Facts (# 33) (hereafter "Def.'s Fact Stmt.") at 1.) It is also undisputed that plaintiff visited the SRCI law library on December 21, 2000, seeking the December 1, 2000 advance sheets of the Oregon Cases, Volume No. 48, and that the library staff could not locate the volume. (*Id.* at 1–2.) On that date, plaintiff typed a letter to WestGroup Publishing, Inc. ("WestGroup"), the supplier of the advance sheets, complaining about the SRCI library staff's mishandling of the subscription and seeking information about the subscription's distribution timelines. (Pl.'s Concise Stmt. of Fact (# 36) (hereafter "Pl.'s Fact Stmt.") at 1 & Pl.'s Exhibit File in Support of Mot. for Summary Judg. (# 37) (hereafter "Pl.'s Exhibits") at Ex. 1.)

In his letter to WestGroup, plaintiff included the introductory lines which are reproduced below:

RE: Account # BXNLSPY # 8952013

In the name of:

STATE OF OREGON
Snake River Corr. Inst.
C3 Law Library
777 Stanton Blvd.
Ontario, OR 97914–8335

(Pl.'s Exhibits at Ex. 1, p. 1.) Plaintiff had also included his full name and "SRCI— # 6199033," which is his inmate identification number, together with the remainder of the prison address in the top right corner of the letter. (*Id.*) Plaintiff avers that he used the account number and address appearing on the face of the "West's Oregon Cases" paperbacks in order to specifically identify the subscription at issue. (Pl.'s Fact Stmt. at 1; *see also* Pl.'s Exhibits at Ex. 8 (copy of the front cover of the Dec. 1, 2000 issue of "West's Oregon Cases").)

The record indicates that WestGroup interpreted plaintiff's December 21, 2000 letter as a request to send replacements for the "missing" volumes; on January 19, 2001, the SRCI mailroom staff forwarded a partial set of paperback "West's Oregon Cases" to defendant Hust to determine which ODOC staff member had ordered them. (Def.'s Fact Stmt. at 2 & Def.'s Mot. for Summary Judg. (# 32) at Ex. 101, Hust Aff., ¶ 4.) The WestGroup shipping label on the package containing the books reads precisely as follows:

FRANK MARVIN PHILLIPS JR
STATE OF OR
(503) 940–9209
SNAKE RIVER CORR INST
C3 LAW LIBRARY
777 STANTON BLVD
ONTARIO OR 97914

(Def.'s Mot. for Summary Judg. at Ex. 104, Myers Aff., Attach. 2, p. 6.) In a section apparently reserved for notes at the bottom of the label, the words "BILLING:

PREPAID," and the number 008209097 appear. (*Id.*) Because plaintiff's inmate identification number was missing from the WestGroup address label, the address was considered incomplete by the SRCI mailroom staff, and therefore the package was not forwarded to plaintiff.[3]

Defendant Hust then undertook an investigation regarding the WestGroup shipment to plaintiff, in which she learned from a WestGroup representative that the books had been sent based on plaintiff's December 21, 2000 letter, which staff at WestGroup had interpreted as reporting an "unreceived" order. (*Id.* at Ex. 101, Hust Aff., ¶ 6.) Defendant requested a copy of plaintiff's letter from WestGroup, which she received on February 2, 2001, and which she copied to her supervisor, Assistant Superintendent Carla Tupou. (*Id.* at ¶¶ 7–8.) Plaintiff's letter states, "I am submitting a copy of this letter to my Assistant Superintendent, Ms. Carla Tupou, who is over law libraries.... I want to keep her apprised of these legal access problems as they occur," and includes the lines "CC: file, Asst. Supt. Tupou, Law Library Coordinators Fendley/Rossi." (Pl.'s Exhibits at Ex. 1, p. 2.) There is a factual dispute as to whether Ms. Tupou received a copy of plaintiff's December 21, 2000 letter prior to February 2, 2001.

During her investigation regarding the WestGroup shipment to plaintiff, defendant learned that plaintiff used a typewriter in the SRCI law library to type the December 21, 2000 letter at issue. (Def.'s Mot. for Summary Judg. at Ex. 101, Hust Aff., ¶ 10.) Because SRCI law library typewriters are only authorized to be used for legal work, plaintiff's use of the typewriter for a personal business letter constituted unauthorized use of a typewriter." (*Id.*) Plaintiff admits to the unauthorized

use of the typewriter. (Pl.'s Resp. to Def.'s Concise Stmt. at 3.)

Defendant also learned from staff at ODOC Central Trust that inmates, including plaintiff, are permitted to order books from WestGroup provided that they pay for the books prior to ordering them by completing and signing a CD28 form authorizing withdrawal of funds from the inmate's trust account. (Def.'s Mot. for Summary Judg. at Ex. 101, Hust Aff., ¶ 11.) Defendant found that plaintiff had not submitted a CD28 to Central Trust to purchase books from WestGroup, (*id.*) a fact which plaintiff confirms, since his letter was not sent with the intention to order any books. (Pl.'s Resp. to Def.'s Concise Stmt. at 3, *and see* Pl.'s Exhibits at Ex. 1 (Dec. 21, 2000 letter).) The court notes that there is no evidence in the record indicating that either plaintiff or the State of Oregon ultimately paid for the duplicate shipment of "West's Oregon Cases."

On March 19, 2001, defendant attests that she completed her investigation of plaintiff's activities, and on March 20, 2001, based on her findings, issued a misconduct report to plaintiff for "violation of Inmate Rules of Prohibited Conduct, Rule 1(g)(Unauthorized Use of a Computer II); Rule 3(f)(Mail Fraud); Rule 4(b)(Disobedience of an Order II); Rule 3(d)(Forgery); Rule 2(g)(Disrespect III) and Rule 2(I)(Extortion II)." (Def.'s Mot. for Summary Judg. at Ex. 101, Hust Aff., ¶¶ 12–14.) All six of the violations alleged in the March 20, 2001 misconduct report issued by defendant are classified as "major," meaning that for each violation plaintiff could have suffered significant sanctions, including monetary fines, loss of privileges,

---

**3.** Applicable ODOC administrative rules require a full name and address, including the inmate's state identification ("SID") number, to be placed on all inmate mail. O.A.R. 291–131–0025.

and disciplinary segregation. *See* O.A.R. 291–105–0066.

However, on March 28, 2001, ODOC hearings officer Myers found that there was insufficient evidence to support the original charges alleged by Hust (defendant) in the misconduct report, and dismissed those charges, finding instead that inmate Phillips (plaintiff) was guilty only of the lesser, minor violation of Rule 4(c)(Disobedience of an Order III) for unauthorized use of the law library typewriter. (Def.'s Mot. for Summary Judg. at Ex. 104, Myers Aff., ¶ 7.) As a result, plaintiff received a sanction of seven days loss of privileges, and a suspended sanction of seven days of disciplinary segregation. (*Id.* at ¶ 8.)

There is a dispute of fact regarding defendant Hust's motives for issuing the March 20, 2001 misconduct report to plaintiff. Plaintiff attests, in an affidavit executed on April 4, 2001, that on the previous day he attended a meeting with Assistant Superintendent Tupou, and Complex # 3 Program Services Manager Gilmore, who is in charge of overseeing the libraries, "to discuss ongoing impairments of the legal access function at the SRCI law library and, also, to discuss the recent issuance upon me of a Disciplinary Report (DR) for having written a letter to West's Publishing Company." (Pl.'s Exhibits at Ex. 2, ¶ 2.) Plaintiff further attests that during the meeting, after he expressed the opinion that the DR was filed by defendant Hust with the intention to chill his correspondence and to retaliate, Gilmore confirmed that the DR was written to discourage plaintiff from writing such letters. (*Id.*) However, Gilmore attests that, "I did not tell Inmate Phillips the misconduct was issued to discourage him from corresponding with WestGroup Publishing or with

any person." (Def.'s Mot. for Summary Judg. at Ex. 103, Gilmore Aff., ¶ 6.) Furthermore, defendant attests that, "I did not issue the misconduct report to retaliate against Inmate Phillips for any reason.... I did not issue a misconduct report because Inmate Phillips corresponded with WestGroup Publishing." (*Id.* at Ex. 101, Hust Aff., ¶¶ 14–15.) The court notes that neither party has submitted sworn statements from Assistant Superintendent Tupou, even though she appears from the record to be a fact witness in this controversy.

The next dispute between plaintiff and defendant that is at issue this case arose over plaintiff's request to use the comb binding machine, which is apparently located in one of the SRCI libraries. According to evidence in the record, plaintiff sent an inmate communication ("kite") directed to "Ms. Rossi/Hust" on June 11, 2001, stating that "I have a brief that needs to be bound and sent soon. Please schedule me for any *MORNING* to briefly use the comb punch (*1 hour will do*)." [4] (Pl.'s Exhibits at Ex. 4 (emphasis in original).) In response, defendant Hust wrote on that kite that, "[w]e do not comb bind materials for inmates." (*Id.*) It is undisputed that defendant received this kite from plaintiff on June 13, 2001, and that she answered it on June 18, 2001—a response time of five days. (*See Id.* (showing date stamps); *see also* Def.'s Mot. for Summary Judg. at Ex. 101, Hust Aff. ¶¶ 14–15.) It is undisputed that plaintiff had a filing deadline of June 18, 2001, for submitting a petition for a writ of certiorari to the United States Supreme Court in the matter of *Phillips v. Johnson,* U.S. Sup. Court Case No. 01M8, in which plaintiff sought to challenge his underlying criminal conviction. (*See* Pl.'s

4. Plaintiff contends that he also sent a kite requesting the use of the comb binding machine on June 3, 2001, but there is no other evidence of this communication in the record. (Pl.'s Resp. to Def.'s Concise Stmt. at 5.)

Exhibits at Exs. 5(a) & 5(b); *see also* Am. Compl. at 15, 17.)[5] It is undisputed that plaintiff missed his June 18, filing deadline, and that his petition was rejected by the Supreme Court as untimely. (Pl.'s Exhibits at Exs. 5(a) & 5(b); *and see* Def.'s Mem. in Support of Summary Judg. (# 34) at 12.) It is undisputed that plaintiff's June 11, 2001 kite failed to specifically inform defendant that he had a June 18, 2001 filing deadline. (Pl.'s Exhibits at Ex. 4; Def.'s Mot. for Summary Judg. at Ex. 101, Hust Aff. ¶ 27.) At issue are defendant's reasons for the apparent delay in responding to plaintiff's June 11, 2001 kite requesting use of the comb binder, and defendant's reasons for denying plaintiff access to the comb binder on June 18, 2001.

Plaintiff argues, and provides evidence to support his contention, that kites requesting access to law library materials and services are routinely processed and answered by library staff in one to two days, although the court notes that all of the kites submitted by plaintiff as evidence of this practice post-date the June 11, 2001 incident. (Pl.'s Fact Stmt. at 4; Pl.'s Exhibits at Exs. 13A–13E; Pl.'s Resp. to Def.'s Concise Stmt. at 5 & Appendices 3B–3E & 4.) Defendant attests that she answered plaintiff's June 11, 2001 kite "in the normal course," without providing any extrinsic evidence to define the "normal" time frame for responding to requests for law library access. (Def.'s Mot. for Summary Judg. at Ex. 101, Hust Aff., ¶ 27.)

Plaintiff argues, and provides evidence to demonstrate, that in October of 2000, he was permitted by SRCI law librarian Fendley to use the comb binding machine to bind a brief directed to the Oregon Supreme Court that was in excess of 144 pages. (Am. Compl. at 13; *see also* Pl.'s Exhibits at Ex. 6(A)–6(D)(correspondence with counsel referring to briefs bound by plaintiff with a "comb").) Although defendant has submitted an affidavit from Fendley in support of her motion for summary judgment, it is silent on this point. (*See* Def.'s Mot. for Summary Judg. at Ex. 102, Fendley Aff.) Defendant attests to the following:

> A machine for comb binding is located in SRCI Program Services for staff use. Until recently, inmate's [sic] were not authorized to comb bind their own material.... I knew from past experience that inmates were not authorized to comb bind their materials and the Court allowed inmates to submit briefs bound with a staple rather than a plastic comb like Inmate Phillips was requesting. Mr. [Trent] Axen [Law Librarian at the Oregon State Penitentiary] confirmed that he does not bind inmate briefs and the court has accepted unbound inmate briefs.[6]

(*Id.* at Ex. 101, Hust Aff., ¶ 28.) On June 18, 2001, upon learning of defendant's decision to deny him access to the comb binding machine, plaintiff sent a kite to Program Services Manager Gilmore, defendant's supervisor, with the inscription "Legal Emergency" at the top and requesting access to the comb binding machine. (Pl.'s Exhibits at Ex. 7(A).) Gil-

---

**5.** Plaintiff has filed a verified amended complaint in this action. A verified complaint, which is signed and certified as true under penalty of perjury, may be used as an opposing affidavit. *Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir.1995); *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir.1987); *see also* 28 U.S.C. § 1746 (setting forth requirements for unsworn declarations).

**6.** Defendant attests further that sometime during the two-week period before she executed her April 5, 2002 affidavit, "SRCI has developed a policy that allows all inmates access to the comb binding machine at cost." (*Id.* at p. 7, n. 13.)

more granted his request on June 25, 2001. (*Id.* at Ex. 7(B).) The court notes again that although defendant has submitted an affidavit from Gilmore in support of her motion for summary judgment, it is silent on this point. (*See* Def.'s Mot. for Summary Judg. at Ex. 103, Gilmore Aff.) Plaintiff attests that defendant did not allow him to enter the SRCI law library until June 29, 2001, at which time he comb punched his materials, bound his document, and filed it with the U.S. Supreme Court. (*See* Am. Compl. at 14 (sworn statement).)

Plaintiff attests that defendant's delay in responding to his June 11, 2001 kite, and defendant's denial of access to the comb binding machine, were unreasonable actions and were done in retaliation for plaintiff having recently prevailed in the disciplinary proceeding initiated by defendant in response to plaintiff's December 21, 2000 letter to WestGroup. (*See* Am. Comp. at 12–15 (sworn statement).) Plaintiff argues that as a consequence of defendant's actions, his petition for a writ of certiorari to the U.S. Supreme Court was filed late, and was subsequently denied as untimely. (*See* Pl.'s Mem. in Support of Mot. for Summary Judg. (# 39) at 12.) Defendant attests that, "[m]y decisions regarding Inmate Phillips [sic] requests were not retaliatory nor an attempt to cause him to miss a court deadline.... If Inmate Phillips had indicated he had a deadline of June 18, 2001, I would have responded sooner or called him to the law library." (Def.'s Mot. for Summary Judg. at Ex. 101, Hust Aff., ¶ 33.)

Based on the above facts, plaintiff alleges three separate § 1983 claims against defendant Hust. In Claim One, plaintiff alleges that defendant violated his First Amendment right to free speech by punishing him based on the content of his December 21, 2000 letter to WestGroup; in Claim Two, plaintiff alleges that defendant violated his rights to access the courts under the First and Fourteenth Amendments by refusing to timely allow him to comb bind a petition to the United States Supreme Court; and in Claim Three, plaintiff alleges that defendant retaliated against him for exercising his constitutional rights to free speech, to access the courts, and to utilize the prison grievance process. (*See* Am. Compl.) Plaintiff has sued defendant in both her personal and official capacities, and requests declaratory relief, injunctive relief, nominal damages in the amount of $1.00, compensatory damages of approximately $14,500.00, and attorney's fees and costs. (*See Id.* at 20–21.)

## C. *Summary Judgment Standards*

Under Fed.R.Civ.P. 56(c), summary judgment is authorized if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the non-moving party. Thus, reasonable doubts about the

existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. However, when the non-moving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.,* 818 F.2d 1466, 1470 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.* at 1468.

### D. *Qualified Immunity*

#### 1. *Legal standard*

 The defense of "qualified immunity" protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This rule " 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.' " *Burns v. Reed,* 500 U.S. 478, 494–95, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The Supreme Court has set forth a two-step approach to the qualified immunity inquiry. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.; see also Jeffers v. Gomez,* 267 F.3d 895, 909 (9th Cir.2001). Second, the court must "ask whether the right was clearly established." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)); *see also Jeffers,* 267 F.3d at 910 (citing *Browning v. Vernon,* 44 F.3d 818, 822 (9th Cir.1995) (citing *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871–72 (9th Cir. 1993))).

#### 2. *Analysis*

Defendant, in her motion for summary judgment, argues that plaintiff has stated two claims, and summarizes the claims as follows:

> [Claim One:] Defendant Hust violated plaintiff's First Amendment rights in interfering with his access to the courts in that on December 21, 2000 plaintiff sought the use of the December 1, 2000 advanced [sic] sheet, Volume 48 of the Oregon Cases from the law library at SRCI for research purposes on a legal matter plaintiff had pending. That volume could not be found at the library and was absent. This denial affected his legal research and generally plaintiff finds the defendant to be incompetent as a law librarian.

> [Claim Two:] Defendant Hust violated plaintiff's First Amendment rights in interfering with his access to the courts in that Hust on June 18, 2001 denied plaintiff's request to comb bind materials prepared by him. Plaintiff claims that Hust intentionally interfered with his access to the courts and denied his request in retaliation. Plaintiff's materials were comb bound and sent to the Supreme Court but were rejected as late.

(Def.'s Mem. in Support of Summary Judg. (# 34) at 1–2.) Plaintiff, in his response to defendant's motion for summary judgment, correctly argues that defendant has mischaracterized the nature of plaintiff's

claims. (Pl.'s Resp. to Def.'s Concise Stmt. of Fact at 11.) Plaintiff's response reiterates that Claim One alleges that defendant violated plaintiff's First Amendment free speech rights, that Claim Two alleges a violation of plaintiff's right to access the courts based on defendant's refusal to timely allow him to comb bind his brief, and that plaintiff's amended complaint alleges a "sub-theory" of retaliation for exercising his constitutional rights, which this court has labeled as Claim Three. (*Id.; see also supra* at p. 1, n. 1 (discussing liberal construction of *pro se* pleadings).) Defendant had the opportunity to respond to plaintiff's cross-motion for summary judgment, in which these claims were more clearly articulated and fully briefed by plaintiff, but defendant intentionally declined to submit a response. *See* Part II, *supra* at pp. 6–7.

■ Plaintiff argues that defendant failed to move against the First Amendment free speech violation alleged in Claim One prior to the August 22, 2002 deadline for filing dispositive motions (*see* April 22, 2002, Civil Minutes (# 29)), and has therefore waived her pretrial defenses to this claim. While *Saucier* stresses that the privilege of qualified immunity is " 'an *immunity from suit* rather than a mere defense to liability ... [which] is effectively lost if a case is erroneously permitted to go to trial,' " 533 U.S. at 200–01, 121 S.Ct. 2151 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(emphasis in original)), it would strain the bounds of common sense for this court to *sua sponte* consider a qualified immunity argument that defendant has completely failed to raise. Therefore, this court declines to find that defendant is entitled to summary judgment on the basis of qualified immunity with respect to Claim One.

With respect to Claim Three, plaintiff's retaliation claim, this court notes that plaintiff further clarified his basis for this claim, and briefed the retaliation issue at length in the memorandum in support of his cross-motion for summary judgment. (Pl.'s Mem. in Support of Summary Judg. at pp. 2, 5–6, 12–15, 19–23; *see also* Am. Compl. at 6, 12.) As discussed above, defendant decided to forego the opportunity to respond to plaintiff's cross-motion for summary judgment and therefore has failed to defend against Claim Three at this stage in the proceedings. *See* Part II, *supra* at pp. 6–7. Again, because defendant has completely failed to assert that she is entitled to qualified immunity with respect to Claim Three, and because there is no requirement that the court consider the issue *sua sponte,* this court declines to find that defendant is entitled to summary judgment on the basis of qualified immunity with respect to Claim Three.

Defendant has specifically argued that she is entitled to qualified immunity from liability regarding Claim Two, in which plaintiff alleges that defendant violated his First and Fourteenth Amendment rights to access the courts, on the basis that she did not violate plaintiff's clearly established constitutional rights. Accordingly, defendant's qualified immunity arguments with respect to Claim Two are addressed below.

### a. *Violation of a constitutional right*

■ Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Grounded in the First and Fourteenth Amendments, *see id.* at 346, 116 S.Ct. 2174, this fundamental constitutional right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from per-

sons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Madrid v. Gomez,* 190 F.3d 990, 995 (9th Cir.1999). "The right of access is designed to ensure that a habeas petition or a civil rights complaint of a person in state custody will reach a court for consideration." *Cornett v. Donovan,* 51 F.3d 894, 898 (9th Cir.1995), *cert. denied,* 518 U.S. 1033, 116 S.Ct. 2580, 135 L.Ed.2d 1095 (1996); *see also Bounds,* 430 U.S. at 827–28, 97 S.Ct. 1491. To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury. *Lewis,* 518 U.S. at 349, 116 S.Ct. 2174. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348, 116 S.Ct. 2174.

■ In this case, plaintiff has established that he was attempting to file a petition for a writ of certiorari to the U.S. Supreme Court seeking to challenge his underlying criminal conviction; therefore, the nature of the suit was that of a habeas petition, and is the type of inmate legal action intended to be protected in *Lewis,* 518 U.S. at 354, 116 S.Ct. 2174; *see also* Part III.B, Summary of facts, *supra* at pp. 14–18. The record indicates that plaintiff was attempting to comply with the applicable Rules of the Supreme Court of the United States, which require that documents submitted to the court be stapled or bound, *see* Sup.Ct. R. 33.2, when he requested access to the SRCI comb binding machine. *See* Part III.B, Summary of facts *supra* at p. 15. Plaintiff's petition to the Supreme Court was in excess of 100 pages so that an ordinary staple would not suffice; additionally, the document was already partially bound with a comb binding, so that plaintiff only needed access to the binding machine to punch holes in an additional 40 pages and insert them in the

existing binding. (*See* Pl.'s Exhibits at Ex. 7(A) pp. 2–3 (explaining circumstances).)

Plaintiff was permitted by SRCI law librarian Fendley to use the comb binding machine in October of 2000; therefore, it was reasonable for plaintiff to expect that he would be permitted to do so again. *See* Part III.B, Summary of facts, *supra* at p. 17. Plaintiff has provided evidence that a typical response time for processing a kite requesting access to SRCI law library materials and services is one to two days. *Id.* at pp. 16–17. On June 11, 2001, when plaintiff sent a kite directed to "Rossi/Hust" the SRCI law librarians, it was therefore reasonable for him to expect that one of them would give him permission to use the comb binder in time to bind his petition and file it by the applicable June 18, 2001 court deadline. *Id.* Because defendant Hust took an atypically long five days to answer plaintiff's kite, and because Hust's decision was to deny plaintiff access to the comb binding machine on June 18, 2001, her actions caused him to face the difficult choice of violating a Supreme Court Rule by submitting a partially bound brief, or missing his filing deadline. *Id.* at pp. 18–19. Plaintiff chose to comply with the Supreme Court Rule, and missed the filing deadline; his petition was subsequently denied as untimely by the Supreme Court. *Id.* Viewing the facts in a light most favorable to plaintiff, it appears from the factual allegations and from the record on summary judgment that defendant violated plaintiff's constitutional right to access the courts. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 (citation omitted).

### b. *Constitutional right was clearly established*

■ The next, sequential step in the qualified immunity analysis is to determine whether the constitutional right of access

to the courts was "clearly established." *Id.* Whether the right is clearly established in a particular case is judged as of the date of the incident alleged, and is a pure question of law. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993). Defendant argues that plaintiff's right to access the courts was not "clearly established," because there is no case directly on point that requires that library services provided to an inmate must include the right to comb bind a court filing. (*See* Def.'s Mem. in Support of Summary Judg. at 6–7.) Such specificity is not required under *Saucier,* 533 U.S. at 202–03, 121 S.Ct. 2151. Courts may formulate a general rule, and if "certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand, the officer would not be entitled to qualified immunity based simply on the argument that courts had not agreed on one verbal formulation of the controlling standard." *Id.*

In this case, there is an Oregon Administrative Rule applicable to inmate legal affairs which by its plain language is directly on point:

> Policy: Within the inherent limitations of resources and the need for facility security, safety, health and order, it is the policy of the Department of Corrections to satisfy its legal obligation to provide inmates meaningful access to the courts by affording inmates reasonable access to law library or contract legal services, and to necessary supplies for the preparation and filing of legal documents with the court and parole board authorities.

O.A.R. 291–139–0005 (effective 3–13–98). The "necessary supplies" that plaintiff needed in order to prepare and file his petition with the Supreme Court, in accordance with that Court's applicable Rules, included access to use the comb binding machine present and available in the SRCI law library. To deny access to the comb binding service that was essential to plaintiff's filing of a habeas corpus appeal, was to deny access to the courts under the general rule articulated in *Lewis,* which requires that state prisons give inmates the capability to "file nonfrivolous legal claims challenging their convictions or conditions of confinement." 518 U.S. at 356–57, 116 S.Ct. 2174. This court finds as a matter of law that to deny tools or services such as comb binding to an inmate plaintiff, so as to render him incapable of substantially complying with an applicable Supreme Court Rule, is to deny access to the courts under *Lewis. See Id.*

In the situation defendant Hust confronted, which was a request from an inmate whom she knows to be an experienced former inmate legal assistant, (*see* Def.'s Fact Stmt. at Ex. 101, Hust Aff., ¶ 17) to be scheduled "soon" for access to the comb binding machine, and in the absence of a published rule to the contrary, a reasonable prison law librarian would have granted access to the comb binding machine as soon as practicable under the *Lewis* standard. However, the record is clear that defendant Hust was willfully blind to the applicable law; when asked by plaintiff to admit, "[t]hat you are somewhat familiar with *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), a U.S. Supreme Court case that circumscribes the meaning of 'legal access,'" defendant, in a sworn statement executed on March 13, 2002, denied knowledge of *Lewis.* (Pl.'s Exhibits at Ex. 11, pp. 2, 5.) Qualified immunity does not protect the "plainly incompetent." *Saucier,* 533 U.S. at 203, 121 S.Ct. 2151 (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

A reasonable official in defendant's position should know that if her actions could foreseeably result in causing an inmate

plaintiff to miss a court filing deadline or violate a published court rule, thereby placing his claims in jeopardy of dismissal, such actions would be unlawful under the clearly established constitutional access to court standards set forth in *Lewis*. A reasonable law librarian, when faced with a question as to whether to provide a particular tool, such as comb binding, to an inmate who requested its use in connection with filing a court document, would have contacted a supervisor or requested advice from an Oregon Department of Justice attorney assigned to ODOC matters. Defendant Hust took neither precaution. The record is clear that as a result of defendant's actions, plaintiff missed his June 18, 2001 filing deadline with the U.S. Supreme Court, and his petition for a writ of certiorari was denied as untimely. *See* Part III.B, Summary of Facts, *supra* at p. 18. Contrary to defendant's arguments, plaintiff has clearly satisfied the "actual injury" requirement articulated in *Lewis*, 518 U.S. at 349, 116 S.Ct. 2174.

Finally, since plaintiff has demonstrated that he was permitted to use the SRCI machine to comb bind a brief directed to the Oregon Supreme Court in October of 2000, and since defendant has admitted that SRCI policy was changed sometime in March of 2002 to allow all inmates access to the comb binding machine, provided that they demonstrate that it is necessary to comply with a court rule and provided that they pay for the costs of utilizing the machine, there is no question that defen-

dant's refusal to allow plaintiff to use the SRCI comb binding machine in June of 2001 was not "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Accordingly, viewing the facts in plaintiff's favor regarding the issue of whether the law was clearly established with respect to the access to courts claim alleged in Claim Two, this court finds that defendant is not entitled to qualified immunity, and therefore denies summary judgment for defendant on this basis. Therefore, this court will examine the merits of plaintiff's three claims, since they are at issue as a result of plaintiff's cross-motion for summary judgment.

### E. Merits of Plaintiff's Claims

#### i. Claim One—First Amendment: Free Speech

As discussed in Part D.2, *supra*, defendant has misinterpreted Claim One and therefore completely fails to argue whether there was a violation of plaintiff's First Amendment right to freedom of speech.[7] In his cross-motion for summary judgment, plaintiff attempts to set forth sufficient evidence to establish that defendant violated his free speech rights when she filed a misconduct report against him based on the content of his December 21, 2000 letter to WestGroup. *See* Part III.B, Summary of facts, *supra* at pp. 9–13; *see also* Pl.'s Mem. in Support of Summary Judg. at 9–11.

---

**7.** Defendant argues generally that plaintiff failed to pursue available administrative remedies with respect to Claim One, and that this alleged flaw is fatal under 42 U.S.C. § 1997e(a), *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), and *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). However, defendant offers no explanation or analysis beyond this bare legal conclusion, so that the court cannot determine whether defendant examined the record in reference to a First

Amendment access to courts claim—an incorrect characterization—or in reference to free speech and retaliation claims, for which plaintiff has adequately alleged exhaustion. (*See* Am. Comp. at 2; *see also* Pl.'s Response to Def.'s Concise Stmt. at Appendices 8–11 (demonstrating steps taken by plaintiff to exhaust free speech and retaliation claims).) Therefore, the court declines to grant summary judgment for defendant on the basis of failure to exhaust Claim One and Claim Three.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In determining whether a prison regulation is reasonably related to legitimate penological interests, the court considers (1) whether there is a valid, rational connection between the regulation and a legitimate government objective which operates in a neutral fashion without regard to the content of the expression; (2) whether there are alternative means of exercising the right at issue that remain open to the prisoner; (3) the impact that the accommodation of the asserted constitutional right will have on prison staff and resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* costs to valid penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 414–419, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254; *Mauro v. Arpaio*, 188 F.3d 1054, 1058–59 (9th Cir. 1999); *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir.1990).

In this case, plaintiff has argued that when defendant filed a six-count misconduct report against him based on his December 21, 2000 letter to WestGroup, she violated his free speech rights. (*See* Pl.'s Mem. in Supp. of Summary Judg. at 9–11.) However, the record indicates that defendant did not prevent plaintiff from sending the letter to WestGroup, and she did not seek to censor its content before it was sent. Rather, she filed a misconduct report against plaintiff based on an investi-

gation that was started as an unintended consequence of the letter-WestGroup's shipment of books to plaintiff without prior authorization and without a correct address for plaintiff. *See* Part III.B, Summary of facts, *supra* at pp. 10–13. While the six original counts in defendant's misconduct report were ultimately dismissed, plaintiff was in fact found guilty of violating Rule 4(c)(Disobedience of an Order III) for unauthorized use of the law library typewriter to type his December 21, 2000 letter to WestGroup. *Id.* at p. 13.

Plaintiff, as the moving party on this claim, bears the burden of demonstrating that defendant had no "legitimate penological interest" for impacting his First Amendment right to free speech. *See Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254. Because he has failed to demonstrate that the actions defendant took to enforce applicable prison regulations were not reasonably related to legitimate penological interests, he has failed to establish an essential element of Claim One; accordingly, plaintiff's cross-motion for summary judgment is denied with respect to this claim. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### ii. Claim Two—First and Fourteenth Amendments: Access to Courts

Prisoners have a constitutional right of access to the courts. *See Lewis*, 518 U.S. at 346, 116 S.Ct. 2174. As discussed *supra*, to establish a violation of the right of access to the courts plaintiff must establish that he has suffered an actual injury. *Lewis*, 518 U.S. at 349, 116 S.Ct. 2174. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348, 116 S.Ct. 2174. In this case plaintiff has demonstrated that there was a

clear constitutional violation under *Lewis* based on defendant's refusal to allow plaintiff access to the comb binding machine in the SRCI law library. *See* discussion *supra* at pp. 1160–61.

Prisons must provide inmates with the capability to bring challenges to their sentences or conditions of confinement before the courts. *Lewis,* 518 U.S. at 356, 116 S.Ct. 2174. If a plaintiff shows that "the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates that the State has failed to furnish '*adequate* law libraries or *adequate* assistance from persons trained in the law.' " *Id.* (quoting *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491) (emphasis in original). Plaintiff has provided sufficient evidence to demonstrate that defendant's refusal to comb bind his materials in accordance with the Supreme Court's Rule 33 caused him to miss his filing deadline of June 18, 2001; therefore, he has demonstrated that the assistance provided by defendant was inadequate and violated his right to access the courts by denying him the capability to timely file a petition for a writ of certiorari. *See* Part III.B, Summary of facts, *supra* at pp. 14–19. Plaintiff's petition was denied as "out-of-time," and the record shows that his lateness was not subsequently excused by the Supreme Court. (Pl.'s Exhibits at Exs. 5(A) & 5(B).) Accordingly, plaintiff's cross-motion for summary judgment with respect to Claim Two is granted; the remaining issues regarding damages shall be resolved at trial.

### iii. Claim Three—Retaliation

█ In order to prevail on a claim of retaliation, plaintiff must allege and prove that defendants retaliated against him for exercising a constitutional right and that the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez,* 108 F.3d 265, 267 (9th Cir.1997),

*cert. denied,* 524 U.S. 936, 118 S.Ct. 2339, 141 L.Ed.2d 711 (1998); *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.1995). Defendant completely fails to argue whether plaintiff has stated a retaliation claim based on defendant's conduct regarding the misconduct report and the delay and denial of access to the comb binding machine. In his cross-motion for summary judgment, plaintiff alleges that defendant's conduct caused a "chilling effect" on the exercise of his First Amendment rights to free speech and to utilize the prison grievance system. (*See* Pl.'s Mem. in Support of Summary Judg. at 13.) Plaintiff need not demonstrate a concrete injury in order to state a retaliation claim. *See Hines,* 108 F.3d at 269; *Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir.2000).

█ While the timing of defendant's conduct is sufficient to establish one element of plaintiff's retaliation claim, *see Pratt,* 65 F.3d at 808; *and see Koch v. Lewis,* 96 F.Supp.2d 949 (D.Ariz.2000) (contemporaneous time is sufficient to show retaliation), in order to establish a *prima facie* case of retaliation, plaintiff has the burden of showing that the alleged retaliation for the exercise of his protected conduct was the "substantial" or "motivating" factor behind defendant's conduct. *See Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Plaintiff also has the burden of pleading and proving the absence of legitimate correctional goals motivating the conduct of which he complains. *Pratt,* 65 F.3d at 808.

█ As discussed *supra* in Part III.B, at pp. 13–14, 18–19, there are genuine issues of material fact remaining as to defendant's motivations regarding the alleged retaliatory conduct. In addition, plaintiff has not demonstrated that defen-

dant was acting in the absence of legitimate correctional goals, which is an essential element of a retaliation claim. Accordingly, plaintiff's cross-motion for summary judgment with respect to Claim Three is denied. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### *CONCLUSION*

Based on the foregoing, plaintiff's motion to compel discovery (# 31) is DENIED; and plaintiff's motion for order granting sanctions (# 42) is DENIED.

IT IS FURTHER ORDERED that defendant's motion for sanctions—request for service (# 44) is DENIED AS MOOT; and defendant's motion for summary judgment (# 32) is DENIED. Plaintiff's cross-motion for summary judgment (# 35) is GRANTED IN PART AND DENIED IN PART. With respect to Claim Two, plaintiff's motion for summary judgment is GRANTED as to liability; however, the remaining issues regarding damages shall be resolved at trial. With respect to Claim One and Claim Three, plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.